Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------------)
LISA CHARETTE                        )
      Plaintiff                      )
VS                                   )
RUDOLPH JONES, (in his individual    )
and official capacities);            )
RONALD GEORGETTI, (in his individual )
and official capacities);            )
JOHN GALLIETTE, (in his individual   )
and official capacities);            )
JOHN HALLIDAY, (in his individual    )
and official capacities);            )
BRIAN MERBAUM, (in his individual    )
and official capacities);            )
      Defendants                     )
-------------------------------------)
```

CONTINUED DEPOSITION OF: LISA CHARETTE
DATE: JANUARY 29, 2007
HELD AT: OFFICE OF THE ATTORNEY GENERAL
55 ELM STREET
HARTFORD, CONNECTICUT

FEB - 5 2007

Reporter: WENDY J. ALLEN, RPR, CRR, LSR #00221
BRANDON SMITH REPORTING SERVICE
44 Capitol Avenue
Hartford, CT 06106
Tel (860) 549-1850

Page 10

1           THE VIDEOGRAPHER:  Back on record, time
2  is 11:42.
3           MR. JORDANO:  Before we begin, for the
4  record, counsel and I, we were off the record for
5  a time period and we talked to Judge Eginton by
6  phone.  All the counsels were present, the parties
7  were present.  The Judge issued his order, and my
8  understanding is that Ms. Charette will go
9  forward.  Is that right, Ms. Engstrom, she'll go
10 forward with the deposition today?
11          MS. ENGSTROM:  Yes.
12          MR. JORDANO:  And with that, we gave
13 our stipulations.  I think we're ready to proceed.
14          How much time have we used on the
15 record so far?
16          THE VIDEOGRAPHER:  Five minutes on
17 record.
18          MR. JORDANO:  Thank you.
19
20     LISA CHARETTE, Deponent, having first
21 been duly sworn, deposes and states as follows:
22
23     DIRECT EXAMINATION BY MR. JORDANO:
24
25 Q    Ms. Charette, this is the continuation of

Page 111

1  A    That's not what I'm saying, sir.  You said
2  how did he harass me.
3  Q    I said how did he sexually harass you?
4  A    I gave you an example.
5  Q    So he asked you to do the forms?
6  A    I gave you an example of the harassment,
7  because then he would accuse me of not following
8  chain of command and being insubordination, so he
9  was trying to put me in a box, essentially.  If I
10 didn't call him appropriately I was not following
11 chain of command, and if I didn't get the right
12 forms then I wasn't doing the right thing, so it
13 was just a never-ending situation with him.
14 Q    What other things did he do that were of a
15 sexual nature that harassed you?
16 A    I can't recall at this time, and I really
17 don't feel comfortable expounding on it because
18 it's making me very, very uncomfortable.
19 Q    Your comfort level I'm sorry, ma'am.  You
20 need to answer my questions unless you don't
21 recall.
22 A    Now you're harassing me, sir.
23 Q    No, I'm not.  I'm entitled to the facts.
24 A    I said I can't recall anything more at this
25 time.

Page 112

```
 1  Q    Did you ever call him at his home and wish
 2  him a merry Christmas?
 3  A    I don't recall, sir.
 4  Q    Did you ever send him a card at home?
 5  A    I don't recall, sir.
 6  Q    Did you ever send him personal items at home
 7  yourself?
 8  A    I don't recall, sir.
 9  Q    You don't recall.
10  A    Well, at what point in time?
11  Q    Any time during the period when you claim he
12  was harassing you.  Did you ever send him personal
13  notes at home?
14  A    Before or after?
15  Q    During the period when you claim he was,
16  quote, sexually harassing you.
17  A    I can't recall, as I said, the exact time
18  period, so I can't answer your question.
19  Q    Did the CHRO find that you had called his
20  home and left messages on his machine?
21  A    I don't recall sir.  I haven't gone through
22  the document.  I haven't even identified the
23  document.
24  Q    Now, do you recall at the CHRO public
25  hearing testifying under oath that you had made a
```

Page 113

1 call to the FBI, that you had placed a call to the
2 Federal Bureau of Investigation?
3   A    I don't recall, sir, no, I don't.
4   Q    Look at paragraph 31. Tell me if that's
5 accurate, that allegation is accurate, to your
6 knowledge.
7   A    Again, I don't recall, as we went back to
8 the other prior paragraph, so I can't say.
9   Q    So you don't know.
10       Now, is it your claim in this case that you
11 engaged in protected speech, namely notifying the
12 FBI about activities at DSS, and that because of
13 that you were retaliated against?
14  A    Yes, this case is based on freedom of
15 speech.
16  Q    And other contacting the FBI, what free
17 speech, what activity of free speech did you
18 engage in?
19  A    I think everything we talked about for the
20 past hour, what occurred at work in discussing
21 that claims were being wrongfully denied and we
22 were being pressured to deny, and that the federal
23 agency, or whatever you want to title them, came
24 in and said we were the highest, we all spoke
25 about those things.

1 there that will assess whether or not someone can

2 obtain a job in the national economy?

3  A    That's how I got the job, sir.  Yes, I am

4 aware.

5  Q    And did you ever seek out that type of

6 counseling after 2001?

7  A    I answered the question, sir.  No.

8  Q    As part of the social security application,

9 did the Social Security Administration ask you to

10 be evaluated by a vocational rehabilitation

11 counselor?

12  A    Privacy, sir.

13           MR. JORDANO:  Note refuse to answer.

14           THE WITNESS:  It's not a refusal to

15 answer.  I answered your question.

16 BY MR. JORDANO:

17  Q    What is your answer?  Did they ask you to go

18 to vocational rehab?  Did Social Security ask you

19 to do it?

20           MS. ENGSTROM:  I think she's claiming

21 that all those kinds of questions are privileged.

22           MR. JORDANO:  Well, that's what I want

23 to make sure.

24           MS. ENGSTROM:  That's what she's

25 claiming.  She's relying on HIPAA.  Right?

1          MR. JORDANO: I want to let you know
2  for the record, HIPAA has an expressed exclusion
3  when you file a lawsuit and you're claiming your
4  mental or physical state's at issue. So I just
5  want to make clear for a second that, but besides
6  that, besides that, she testified to some of this,
7  and I think you know as a matter of law, I'm
8  entitled to know about it. She can't use HIPAA to
9  keep me from getting medical information about
10 damages she's claiming in this case, especially
11 since she testified already that she claimed she
12 was wrongfully fired. But needless to say, I'm
13 going to bring it up with Judge Eginton, and I
14 want to make a record.
15         THE WITNESS: But not accommodated,
16 sir. That's I think the part you're missing. And
17 the social security thing, it's called a privacy
18 act. I'm not trying to give you a difficult time,
19 but there are laws to protect people.
20 BY MR. JORDANO:
21 Q   Ma'am, you already testified under oath that
22 you got social security disability benefits. You
23 testified to it under oath.
24 A   And sir, I was not advised of what the
25 situation was, and the deposition didn't take

Charette v. Jones

1/29/2007                                                          Lisa Charette

Page 205

1 place.  So that's what the Judge said.

2  Q    Really?  Where did the Judge say the
3 deposition never took place?

4  A    In his order.

5  Q    He said that -- there's language in there
6 that says the deposition of August never took
7 place?

8  A    It did not take place.  Those were his
9 words.

10  Q    Those were his words?

11  A    Yes.

12  Q    Do you remember meeting me on August 3rd,
13 2006?  Do you remember meeting at Ms. Spiegel's
14 office?

15  A    I remember the deposition.

16  Q    And you remember being there, put under oath
17 like you were here today?

18  A    I'm speaking of what the Judge has ordered.

19  Q    I'm not asking what he ordered, I'm saying
20 do you remember meeting on August 3rd, 2006 at Ms.
21 Spiegel's office at 3:30 in the afternoon?

22  A    A deposition that did not take place.

23  Q    Do you remember meeting there?

24  A    According to the Judge.

25  Q    Do you remember meeting there, ma'am?

```
 1  A     According to the Judge, it didn't take
 2  place.
 3  Q     Ma'am, I didn't --
 4  A     I answered the question.
 5  Q     -- ask you what the Judge said.  My question
 6  is, do you remember appearing at Ms. Spiegel's
 7  office on August 3rd, 2006, at 3:30 in the
 8  afternoon?
 9           MS. ENGSTROM:  I'm going to object,
10  badgering, badgering.
11           MR. JORDANO:  I'm asking a fact, did
12  she appear.
13           MS. ENGSTROM:  I'm going to object,
14  badgering, and if you continue, we'll just stop
15  right now.
16           THE WITNESS:  Thank you.
17           MR. JORDANO:  Look, here's what I'm
18  going to do.  I'm going to stop it now and reserve
19  my time, because I'm going to take this to the
20  Judge tomorrow.  All right?
21           THE VIDEOGRAPHER:  Going off record,
22  time is 4:14.
23           MR. JORDANO:  I reserve whatever time I
24  have left to add on to the next time after the
25  Judge makes a ruling.  And for the record, I'm
```

Page 207

1  going to ask the Judge for sanctions for not
2  answering my questions.
3          THE WITNESS:  Your questions were
4  answered, it's just not the answer you want.
5          MR. JORDANO:  Thank you very much.
6          (Deposition suspended.)